## DAVID KIRKALDIE v. THOMAS PAIGE.

Where the declaration, in an action for slander, consisted of two counts, the one for words charging the plaintiff with perjury, and the other for words charging him with theft, and the plaintiff introduced evidence in support of both counts, it was held that he might, at any time before verdict, abandon one count, and that there was no error in the court in permitting him to do so, and in directing the jury to lay out of the case all the testimony, applicable to that count, which had been introduced.

Where, in an action for slanderous words, there was an attempt on the part of the defendant to impeach the credit of the witnesses by whom the speaking was proved, it was held that the plaintiff was entitled to prove, as tending to sustain the credibility of the witnesses, that the witnesses resided in the State of New York, and that the defendant had, by *solicitation*, *money*, and *threats*, endeavored to induce them to decline attending court and testifying in the case. HEBARD, J., dissenting.

But such testimony would not be admissible, to prove *malice* on the part of the defendant.

TRESPASS ON THE CASE for speaking slanderous words. Plea, the general issue, and trial by jury.

The declaration consisted of two counts, in the first of which the plaintiff alleged that the defendant had spoken words imputing to the plaintiff the crime of perjury, and, in the second, words imputing to him the crime of theft. On trial, the plaintiff introduced two witnesses, both of whom testified to the speaking, by the defendant, of the words charged in the first count of the declaration, and one of them testified to the speaking, by the defendant, of the words charged in the second count. The plaintiff was then permit-

Kirkaldie v. Paige.

ted by the court, notwithstanding objection made by the defendant, to prove by the same witnesses, that they resided in the state of New York, and that the defendant had endeavored, by solicitations, money, and threats, to induce them to decline attending court, or testifying against him. The defendant introduced testimony tend-' ing to discredit both of said witnesses, and the plaintiff introduced testimony tending to sustain their credit.

After the testimony in the case had been closed, the plaintiff stated that he should abandon the first count in his declaration, and go for a verdict upon the second count only,—to which course the defendant objected. The court took the objection into consideration, and directed the argument of the case to proceed to the jury; the case then proceeded in argument,—the plaintiff claiming a verdict upon the second count only,—until the closing argument for the plaintiff, when the court decided that the plaintiff might abandon his first count; and, on the argument being closed, the court instructed the jury to lay the first count, and all the testimony in relation to it, out of the case.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

*Thrall & Pond* for defendant.

I. It is contended, on the part of the defendant, that the evidence of the defendant's solicitation of the plaintiff's witnesses was totally irrelevant, and ought to have been rejected by the court.

1. The acts of the defendants were no admission that he had uttered the words imputed to him; but their only tendency was, to show that he intended to defend the suit, which the plaintiff had commenced against him.

2. But admitting that the tendency was to show the speaking of the word, by the defendant, yet, inasmuch as they were acts performed after the commencement of the plaintiff's action, they were not properly admissible in evidence. The decisions upon this question, by the courts in England, are contradictory; Lords Kenyon, Ellenborough, and Mansfield have alternately received and rejected such evidence, and therefore the question may be regarded as unsettled here. *Charlter* v. *Barrett*, Peake's Cas. 22. *Mead* v.

33

Kirkaldie *v.* Paige.

*Daubigny*, Ib. 125; *Lee* v. *Huson*, Ib. 166; *Rustell* v. *Macquister*, 1 Campb., note 49; *Stuart* v. *Lovell*, 2 Stark. R. 93; *Finnerty* v. *Tipper*, 2 Campb. 72. The admission of such testimony has been regretted and condemned by nearly every court, by whom the question has been discussed. *Thomas* v. *Croswell*, 7 Johns. 270; *Inman* v. *Foster*, 8 Wend. 602. *Mix* v. *Woodward*, 12 Conn. 292. This court should adopt such a rule, as will hereafter effectually silence such regrets and cavillings, and one that will not deserve them.

II. But should the court think that the evidence was admissible, we then contend that the jury should have been told not to give damages therefor. See Stark. on Slander, 290, and the cases before cited, and also 4 Wend. 138. It is like a case, where evidence is admissible in support of one count only, when there are two counts in the declaration. In such case it is error to admit testimony *generally*, unless the jury are properly instructed in regard to its application. *Vail* v. *Strong*, 10 Vt. 457.

III. The defendant farther contends, that the court below erred in permitting the plaintiff to abandon the first count in his declaration, at that stage of the proceedings, after having given evidence in relation thereto to the Jury. The authorities cited in support of the decision do not sustain the position. The language used by Chitty, and also by Sergeant Williams, in his notes to Saunders, sustain us in this position. "Where it appeared by the judge's 'notes that the jury *calculated* the damages on evidence applicable 'to the good counts only, the court will amend the verdict," &c. 1 Chit. Ib. 394. 2 Saund. R. 171, note. This conclusively shows that the cases, where this is proper, are where the *damages* rest in calculation, or computation, merely, and not in the discretion of the jury. *Eldowes* v. *Hopkins et al.*, 1 Doug. 376; *Mayo* v. *Archer*, 1 Str. 513. *Williams* v. *Breedon*, 1 B. & P. 329.

*S. S. Phelps*, of counsel for the defendant, submitted an argument in writing,—contending that the evidence admitted by the court, in reference to the defendant's practices with the plaintiff's witnesses, was wholly irrelevant,—1, Under the *pleadings*, the declaration giving no notice to the defendant to be prepared to meet

Kirkaldie *v.* Paige.

this proof,—2, In reference to the *subject matter* of the suit, the charge in this declaration being for speaking slanderous words, and the proof tending to prove an entirely distinct offence,—3, That it was inadmissible in aggravation of damages, as it tended, not to show an *injury*, but only an *attempt* at injury, and the injury, if any had resulted, could not be said to be the *immediate* consequence of the slander, which, alone, can be taken into consideration,—4, That it was not admissible as tending to prove *malice*, inasmuch as the only *subsequent* acts of the defendant, in actions for slander, which are admitted to be proved for this purpose, are those which tend to injure the plaintiff's character, and the commission of these acts by the defendant could be accounted for in other ways, than by supposing malice,—and 6, That the admission of such testimony would be positively pernicious, as tending to put in issue, not the merits of the case on trial,—but the character of the parties, and the expedients to which they had thought it advisable to resort, in order to bring about a successful result in the suit.

*Foot & Everts* and *E. L. Ormsbee* for plaintiff.

I. The fact, that the defendant had endeavored by money and threats to prevent the witnesses from attending court, or from testifying against him, was admissible.

1. It shows malice *in fact*, or, in the language of the cases, "*actual malice and vindictive* motives," on the part of the defendant; such testimony is clearly admissible, both upon precedent and principle; 4 Phil. Ev. 245,—Cow. & Hill's Ed.; *Bromage et al.* v. *Prosser,* 10 E. C. L. 321; *Inman* v. *Foster,* 8 Wend. 609; Saund. Pl. & Ev. 808; 19 Wend. 296; Stark. on Sland. 398–9; Peake's Cas. 166, 125; 4 Wend. 138–9; 1 Campb. 49.

2. The act proved on the part of the defendant was a virtual admission, that the testimony of the witnesses in chief was true. It was also admissible as tending to *sustain their credit,* an attempt having been made to impeach them.

II. That evidence was given, applicable to the other count in the declaration, cannot be the ground of a new trial, as the jury were instructed to lay that count out of the case, and all the testimony relating thereto. Other libels may be given in evidence,

Kirkaldie v. Paige.

where the jury are instructed not to give damages for them. See the cases above cited.

III. It is the right of the party to abandon any part of the claim before judgment, and it results in no injury to the defendant. "In case there be an insufficient count, if the mistake be discovered before verdict, it is expedient to strike it out by leave of the judge, or enter a *nolle prosequi* as to such count; or, *on the trial, to take a verdict only on the sufficient counts ;* so, where it appears by the judge's notes that the jury calculated the damages on evidence applicable to the good counts only, the court will amend the verdict by entering it on those counts, though evidence was given applicable to the bad counts." Chit. Pl. 354; 2 Saund. 171; Doug. 730; 1 Bos. & Pull. 329; 7 Cow. 725. In *Genet* v. *Mitchell,* 7 Johns. 120, it was held that the plaintiff might abandon one part of the libellous matter, in any count, on the trial, and that the part abandoned might be used in connection with the part retained, to show its meaning. *Gould* v. *Weed,* 12 Wend. 21. The jury returned a verdict upon one count, in this case, and, like a special verdict, nothing can be intended, but what is found by the jury. 1 Wils. 55. Hob. 62.

The opinion of the court was delivered by

BENNETT, J. The slanderous words in the first count charge the plaintiff with the crime of perjury, and those in the second with the crime of theft. On the trial it seems testimony was given tending to prove both counts, but the plaintiff was permitted to abandon his first count, and the court directed the jury to lay that count, and all the evidence relating to it, out of their consideration. This is now claimed as matter of exception; but we do not think that there was any error in the proceedings of the county court in this particular. The rule of practice is thus laid down by Chitty, in his treatise on pleading, Vol. 1, p. 394; in case " there be an insufficient count, if the mistake be discovered before verdict, it is expedient to strike it out by leave of the judge, or to enter a *nolle prosequi* as to such count, or, at the trial, to take a verdict on the sufficient counts." So, where there has been a general verdict, and evidence given only on the good counts, the practice has been

for the court to permit the verdict to be amended by the judge's notes; and even though evidence be given applicable to the bad count, yet if it appear by the judge's notes that the jury calculated the damages on evidence applicable to the good counts only, the verdict will be amended. '

In the case now before us, there could be no possible objection to the course adopted by the county court. The slanderous words charged in the two counts are entirely distinct and independent, and there could be no confusion in the minds of the triers as to what evidence was applicable to each count. Besides, it might well be enquired, whether it was not matter resting wholly in the discretion of the county court, and in no event matter of error.

The only question, with which we have had any difficulty, is in relation to the admission of the testimony, which was objected to. After the plaintiff had introduced two witnesses, to prove the speaking of the words, he proposed to prove that the defendant had, by *solicitation, money,* and *threats,* endeavored to induce these witnesses, who resided in the state of New York, to decline coming to court, or testifying against him. This testimony was admitted, and, if not admissible, the case must be opened.

It is said, in argument, that this was proper evidence to show malice. But I cannot conceive how this has a tendency to show the *quo animo,* with which the words might have been spoken. There seems to be no possible connection between them in this particular. The question, then, arises, has this testimony any tendency to confirm the witnesses, who had testified to the speaking of the words? And can any presumption be drawn from such improper conduct of the party, in relation to the fact of his having spoken the words charged in the declaration? We sometimes infer *an effect* from the proof of an *adequate cause;* and sometimes, upon the proof of an *effect,* we infer the *cause.* The improper conduct of the defendant, in attempting to keep the plaintiff's witnesss from giving testimony, must have had a *motive,* a cause adequate to produce such an effect; and I think the most natural motive, for such conduct, is, to attribute it to his supposed knowledge, that the truth would operate against him. Mr. Greenleaf, in his admirable treatise upon evidence, p. 42, sec. 37, well says, " that

the presumption of innocence may be overthrown, and a presumption of guilt raised, by the misconduct of the party in suppressing or destroying evidence, which he ought to produce, or to which the other party is entitled." Roscoe's Evid., p. 14, has the same principle.

If a man is accused of an offence, and, upon being charged, has fled, or endeavored to make his escape, this is competent evidence to go to a jury, as tending to overcome the presumption of innocence, and raise a presumption of guilt. So the introduction of a falsehood into the defence has a like effect against the prisoner. The spoliation of papers, material to show the neutral character of a vessel, furnishes a presumption against her neutrality. *The Pezarro,* 2 Wheaton 227. In *Armory* v. *Delamire,* 1 Strange 505, where the finder of a lost jewel would not produce it on trial, the jury were directed to presume it to be of the highest value of its kind. While in *Clunnes* v. *Pezzey,* 1 Campb. 8, where the defendant had been guilty of no improper conduct, and the only evidence was of the delivery to him of the plaintiff's goods, of an unknown quality, the presumption was held to be in his favor, and that, the goods were of the cheapest quality. The case of *Downer* v. *Bowen,* 12 Vt. 452, is somewhat in point. In that case it was held that the poverty of an execution debtor was admissible, as having some tendency to prove that the execution might have been delivered to the sheriff with instructions not to commit the debtor without *express* direction. That case went upon the ground, that the poverty of the debtor furnished a *motive,* why such instructions might have been given, though the presumption is a very slight one arising from such a fact.

Though it is true, as argued at the bar, that the defendant might have had other motives, and not the one we have assigned, why he wished to keep the plaintiff's witnesses from coming to court, yet we think it is by far the most rational motive to suppose that he felt self convicted that he was in the wrong, and that this would be made manifest on trial if these witnesses should appear. Though the presumption might be slight, derived from such a source, and should be acted on with great caution, yet a majority of the court think the evidence was properly admitted. The jury should judge

of the *motive* of such conduct in the defendant, and if, upon the whole case, they were satisfied that it proceeded from some motive, other than the one the most *obvious*, they would give no effect to this testimony against the defendant.

It does not appear, from the bill of exceptions, for what particular purpose this evidence was offered, or admitted by the court. If admitted to show *malice* in the defendant, or if the jury had been instructed to consider it in that view, there would, we think, have been error. No question is raised in the case in regard to the charge of the court, no complaint is made, that the court omitted to give proper instructions to the jury on this evidence, or that they gave those which were improper. This is not to be presumed. The bill of exceptions must show *affirmatively* that there has been error.

The result is, that the judgment of the county court is affirmed.

HEBARD, J., dissenting.