## LIZZIE CARPENTER v. EZRA WILLEY.

---

## EZRA WILLEY v. LIZZIE CARPENTER.

---

### GENERAL TERM, 1892.

---

*Evidence. Exception to question merely. Tampering with witness. Slander. Privilege. Practice. Petition for new trial. Affidavit of juror.*

1. The action being slander for calling the plaintiff a whore, the evidence of a third person that the defendant had said to him that he had applied that epithet to the plaintiff is admissible.

2. An answer is not rendered inadmissible by the fact that it is not responsive to the question.

3. It may be shown that a party has offered to pay a witness a sum of money if the witness could testify in his favor.

4. Also that he has attempted to prevent the attendance of one who is present as a material witness upon the other side.

5. The trial court may, in its discretion, refuse to permit the defendant, upon cross-examination of a witness improved by the plaintiff in the opening, to ask a question not properly growing out of the direct examination, but which is legitimate evidence in defence, and may compel the defendant to postpone such inquiry until the putting in of his own case.

6. Evidence that the plaintiff's husband had made the same charge against her is not admissible, it not appearing that it was before the alleged speaking by the defendant.

7. An exception will not lie to the exclusion of a question merely, although a proper one. There must also be an offer, stating what the answer will be if the question is allowed.

8. The defendant having attacked the reputation of the plaintiff for chastity at the time of the speaking of the slanderous words, she may sustain her reputation during the same period in rebuttal.

9. The words were not privileged because spoken to one who had formerly been pastor of the church of which both the plaintiff and defendant were members, and in answer to his inquiries.

10. Upon a petition for a new trial for the alleged cause that the jury used an improper method of arriving at the amount of the damages, the affidavit of a juror cannot be used to impeach the verdict.

11. *Held*, That the evidence which was legally admissible did not support the petition, and that the same should be dismissed.

Action for slander. Plea, the general issue. Trial by jury at the June term, Orange county, 1891, TAFT, J., presiding. Verdict and judgment for the plaintiff. The defendant excepts.

The declaration alleged, and the evidence of the plaintiff tended to prove, that the defendant had slandered the plaintiff by calling her a whore, thereby charging her with the crime of adultery, she being a married woman. Upon the trial of the case the following exceptions were taken:

1.  The plaintiff proposed to show by one Fay that the defendant on other occasions than those mentioned in the declaration had made similar statements to those for which the suit was brought, as tending to show malice. The question was allowed under the exception of the defendant. Thereupon, the witness gave the following answer, which was not responsive to the question:

"He wanted to know if I knew anything about Mrs. Carpenter when she was a girl—anything against her? I said, 'No, sir.' He said he had called her a whore, and Nat. Carpenter had sued him. He said, 'If you know anything about it that will help me it will put $25 into your pocket.'"

2.  The plaintiff was permitted to show, subject to objection and exception, by one Ames, that the defendant had told the witness in the spring of 1889 that he had called Mrs. Carpenter a whore, and that they had sued him.

3.  One Lord was a material witness in the case to the speaking of the slanderous words. The plaintiff was permitted to show by Daniel Johnson that the defendant had requested Johnson to write Lord for the purpose of keeping him away from the trial of this case.

4.  Upon the cross-examination of this witness, Johnson, he having testified merely to the above matters, the defendant proposed to ask him as to the reputation of Mrs. Carpenter with respect to chastity during the summer when the words were alleged to have been spoken. The plaintiff objected that this was not proper matter of cross-examination, and the court excluded it as a part of the cross-examination, but said to counsel for the defendant that they might ask the question in putting in the defence. To this action the defendant excepted.

5.  The defendant proposed to ask the plaintiff whether her husband did not charge her in the public street with the same offence which the defendant had alleged against her. This evidence was offered as tending to show that the men-

tal anguish of the plaintiff was occasioned by the husband's charge, and not by the charge of the defendant.   The evidence was excluded and the defendant excepted.

6.   George Johnson, a witness called by the defendant, was asked this question :   "Did you hear in the summer of 1888 some particular things, some stories about her?"   To this question the plaintiff objected.   Thereupon, counsel for the defendant said :   "We ask this for the purpose of showing facts and circumstances brought to the knowledge of Mr. Willey as bearing upon his honesty in making the statements he did."   The court excluded the question, and the plaintiff excepted.

The defendant testified that he had, prior to the time of the alleged slander, heard reports derogatory to the plaintiff's character as to chastity, and believed them.

7.   The plaintiff's evidence tended to show that the slanderous words were spoken by the defendant in August, 1888, to one Lord, at a camp-meeting in Hartford.   Lord was then a clergyman, and had formerly been pastor of the church of which both the plaintiff and defendant were members, and the defendant claimed that what he said was in answer to an inquiry addressed to him by Lord in reference to the plaintiff and one Moulton; that it was spoken to Lord alone, and was privileged under the circumstances unless maliciously spoken.   The court charged the jury that the words were not privileged for this reason, to which the defendant excepted.

The defendant brought a petition for a new trial, returnable to the May term of the Orange County Supreme Court, 1892, which was heard with the foregoing case.   The damages awarded by the jury upon the trial of the original case were $679.17.   The petitioner claimed in his petition for a new trial that the jury had arrived at this sum by averaging the amounts which they severally marked ; that several of the jurors objected to the amount reached as a conclusion in

this manner, and would not have consented to give damages in so large a sum had they not been advised and believed that this was the proper and lawful way of determining the amount of the damages.

In support of this claim the petitioner produced the affidavits of certain jurymen, who deposed that the amount of the damages was determined in the manner set forth in the petition, and that they were informed and acted under the belief that this was the only lawful and proper manner in which the amount could be determined after the jury had agreed that the defendant was liable in some damages, but were unable to agree as to the amount.

In addition to the aforesaid affidavits of the jurors, the petitioner produced the affidavit of one Miller, the officer having the jury in charge, the material part of which was as follows :

"At said term the case of *Lizzie Carpenter* v. *Ezra Willey*, which was an action of slander, was tried by jury, and when the jury in said cause retired to the jury room after the case had been submitted to them, I had charge of them until they rendered their verdict into court. I was present all of the time while the jury were arriving at their verdict in said cause. After said jury had agreed that said Willey was guilty of the slander, the question of damages came up, and I think that the foreman of the jury suggested that each juryman should set or mark down such damages as each thought the plaintiff was entitled to recover, which they proceeded to do, and the whole was added together and divided by twelve, and the quotient thus obtained was taken as their verdict for the damages. I know that there were some objections made by some of the jurors to the large amount of damages, but it was claimed by some of them, and I believe by the foreman, that the way and manner in which they arrived at said damages was binding, and that there was no other way but to submit to the result."

*J. K. Darling* and *R. M. Harvey* for the defendant.

The defendant had a right to show that reports derogatory to the plaintiff's character were in circulation as tending to prove that he might have heard and repeated such reports in the honest belief that they were true. *Richardson* v. *Royalton T. Co.*, 6 Vt. 496; 1 Starkie Ev., § 7; *Hutchinson* v. *Wheeler*, 35 Vt. 330.

The communication was a privileged one. *Shurtleff* v. *Stevens*, 51 Vt. 501; *Davis* v. *Snead*, L. R., 5 Q. B. 611.

A verdict arrived at as this was, by averaging the opinions of the jurymen, is nothing more than a wagering verdict and cannot stand; and the affidavits of the jurymen are admissible to show how it was arrived at. *East Tennessee & W. N. C. R. Co.* v. *Winlers*, 85 Tenn. 240; *Griffin* v. *Harriman*, 74 Iowa 436; *Metcalf* v. *Deane*, 1 Croke's Eliz. 189; *Jackson* v. *Dickinson & Thompson*, 15 Johns. 309; *Cockran* v. *Street*, 1 West Va. 79; *Little* v. *Larrabee*, 2 Greenl. 37; *Elledge* v. *Ladd*, 1 Humph. 43; *Joyce* v. *State*, 7 Baxt. 273; *Bennett* v. *Barker*, 1 Hum. 399; *Harvey* v. *Jones*, 3 Hum. 157; *Harvey* v. *Rickett*, 15 Johns. 87.

*Hunton & Stickney* for the plaintiff.

The plaintiff was properly allowed to show that the defendant attempted to prevent her witnesses from attending court. *Kirkaddie* v. *Paige*, 17 Vt. 256.

The defendant had no right to put in his case upon the cross-examination of the plaintiff's witnesses, unless the subject-matter of his inquiries grew out of the direct examination. 1 Greenl. Ev., § 445.

It is not error to exclude a question unless accompanied by some statement of what the answer will disclose. *Roach* v. *Caldbeck*, 24 Atl. Rep. 989; *Bowen* v. *Hall*, 20 Vt. 232; 1 Stev. Ev. 43.

The communication was not a privileged one. *King* v.

*Patterson*, 9 Atl. Rep. 705; 2 Greenl. Ev., note 1, § 421, p. 383; *Somerville* v. *Hawkins*, 14 Jur. 450.

The affidavit of a juror is not admissible to impeach his verdict. *Sheldon* v. *Perkins*, 37 Vt. 550; *Tarbell* v. *Tarbell*, 60 Vt. 486.

THOMPSON, J.   The testimony of the witnesses, Fay and Ames, was clearly admissible.   It tended to prove an admission by the defendant of the speaking by him of the slanderous words charged in the declaration.   Fay's testimony also tended to prove an attempt by the defendant to manufacture evidence with which to impeach the plaintiff's character.   The fact that Fay's testimony was not responsive to the questions put to him did not render it inadmissible for that reason.

The witness Lord, improved by the plaintiff, was a material witness, as his testimony tended to prove the speaking by the defendant of the slanderous words alleged in the declaration to have been spoken in August, 1888.   The testimony of plaintiff's witness, Daniel Johnson, tended to prove an attempt by the defendant to prevent the attendance of Lord as a witness in behalf of the plaintiff.   Such an attempt is admissible against the party making it, as evidence tending to confirm the witness whose testimony is thus sought to be suppressed.   *Kirkaldie* v. *Paige*, 17 Vt. 256.

The inquiry of this witness by the defendant as to plaintiff's reputation for chastity did not relate to any matter inquired about in his examination-in-chief, and was no part of the legitimate and proper cross-examination.   It related solely to matter of defence.   It was wholly within the discretion of the trial court to permit the defendant to make the inquiry at that stage of the case, or to require him to defer it until he took the case in defence.   *Carey* v. *Hart*, 63 Vt. 424; Greenl. Ev., §§ 445, 447.   The defendant was

distinctly informed by the presiding judge that he could make the inquiry when he came to put in his defence.

The court properly excluded the evidence offered by the defendant to show that plaintiff's husband had charged her with the same things as those which were the gist of the defendant's slanderous utterances concerning her. The evidence offered did not tend to prove that the alleged accusation of the husband, if ever made, was made prior to the speaking of the slanderous words by the defendant.

The defendant put to his witness, George Johnson, this inquiry in regard to the plaintiff: "Did you hear in the summer of 1888, some particular things, some stories about her?" The court excluded the question, to which ruling the defendant excepted. It is incumbent upon the party excepting to the rejection of evidence to have the record show that the ruling was prejudicial to him. The general rule is that to reserve an available exception to the exclusion of the testimony of a witness a proper question must be asked, and upon objection thereto an offer must be made, stating the testimony which the witness will give if permitted to answer the question, and an exception must be taken to the exclusion of the evidence as shown by the question and offer. *Kern* v. *Bridwell*, 119 Ind. 226, (12 Am. St. R. 409) ; *Dreher* v. *Fitchburg*, 22 Wis. 675, (99 Am. Dec. 91) ; *Carpenter* v. *Corinth*, 58 Vt. 214 ; *Roach* v. *Caldbeck*, 64 Vt. 593, (24 Atl. R. 989). In *Carpenter* v. *Corinth, supra*, exception was taken by the plaintiff to the permitting certain questions to be put to witnesses, but it did not appear what answers were given, if any. In disposing of the exception the court said : "It is incumbent on the plaintiff to show that the answers were prejudicial to him  The court cannot presume that they were.  *  *  *  The questions were not evidence, and it was not error to allow them to be put." The rule above stated is simply the converse of this holding. To the same effect are *Ainsworth* v. *Hutchins*, 52 Vt. 556,

and *Smith* v. *Ins. Co.*, 60 Vt. 682. There was no offer in connection with the ruling of the court excluding the question put to Johnson to prove any fact by him material to any issue in the case, nor does the record show that he would have given any testimony in response to the question. Hence the defendant's exception to the exclusion of this question cannot avail him.

The defendant's witness, Julia Udall, having been asked by him the question whether the treatment of the plaintiff by her neighbors had been different since the alleged slander from what it was before, the court refused to permit the witness to answer the question, to which the defendant excepted. It does not appear that this witness had any knowledge upon that subject, nor was there any offer by the defendant to prove any fact by her bearing upon that question. Hence, for the reason above stated, this exception cannot avail the defendant.

The defendant introduced evidence tending to prove that at the time of the speaking of the slanderous words by him the reputation of the plaintiff as to chastity was bad, and that for a long time prior thereto it had been. It was competent for the plaintiff to meet this attack upon her character by evidence showing that in this respect her reputation was good during the time in question. A fair construction of the exceptions shows that this is all the plaintiff was permitted to do in rebuttal on this phase of the case.

The fact that the slanderous words were spoken by the defendant at a camp-meeting, to one Lord, who had formerly been the pastor of the church of which the plaintiff and the defendant were members, and in answer to inquiries by Lord, does not make such speaking a privileged communication. So far as appears there was then no relation subsisting between Lord and the plaintiff, nor between him and the defendant, which entitled him, as a matter of public, social, or moral duty, to inquire into the character of the

plaintiff, or which would protect the defendant in making the slanderous charges against her, although made without malice, and in the honest belief that they were true. The interview between Lord and the defendant was simply the casual meeting of two old acquaintances, during which they proceeded to discuss the reputation of the plaintiff for chastity. The case is barren of facts necessary to bring it within the doctrine of privileged communications, by a minister of the gospel, or to him, as discussed and laid down in *Shurtleff* v. *Stevens*, 51 Vt. 501 ; 2 Green. Ev., § 421, n. 1.

    *Judgment affirmed.* ·

*Willey* v. *Carpenter* was a petition for a new trial in the foregoing case, and was heard with it.

The alleged ground for a new trial is that after the case had been submitted to the jury, and they had retired to the jury room to consider it, they were misinformed by their foreman in respect to the law governing the manner in which they should arrive at their verdict, and that in consequence of being thus misinformed, they returned a verdict for the plaintiff for much larger damages than they otherwise would have done.

In support of his petition the defendant offered in evidence the affidavits of several of the jurors. This case does not disclose anything which makes it an exception to the general rule of law in this State, that affidavits of jurors as to what occurred in the jury room while they were considering the case will not be received as evidence to impeach or set aside their verdict. *Sheldon* v. *Perkins*, 37 Vt. 550 ; *Tarbell* v. *Tarbell*, 60 Vt. 494. While it is conceivable that a case might arise which would call for a relaxation of this rule, there is nothing in the case at bar that calls for a consideration of such a contingency.

The only admissible evidence offered in support of the petition is the affidavit of Miller, the officer who had charge

of the jury.   It fails to show that there was any agreement
among the jurors that the damages should be ascertained or
determined by any particular method, and which was fol-
lowed by them in making up their verdict, or that any juror
was misled by any statement of the foreman, or of any one
else, in regard to the law which should govern their action
in assessing damages.   It is therefore to be presumed that
they followed the law on that subject as laid down by the
presiding judge in his charge.   The evidence failing to sus-
tain the allegations of the petition, there is no occasion for
us to discuss the law which would govern in such a case as
is stated in the petition.

*Petition dismissed with costs to the petitionee.*