EDGAR A. POE, Respondent, v. JAMES C. STOCKTON
AND DANIEL H. DUPEROW, Appellants.

Kansas City Court of Appeals, March 3, 1890.

1. Replevin: PROPERTY OF PLAINTIFF: VENDOR AND VENDEE:
INSTRUCTION AS TO DELIVERY. Replevin cannot be maintained
upon a mere naked possession, without a general or special prop-
erty in the plaintiff; and an instruction, that if the plaintiff (the
vendor) did not deliver the possession of the stock of goods in con-
troversy to the defendant the jury will find for the defendant, is
erroneous.

2. ———— : FRAUDULENT REPRESENTATIONS OF CONSPIRATORS : INSTRUC-
TION ASSUMING CONSPIRACY. An instruction telling the jury that
if plaintiff was induced to enter into a contract by the fraudulent
representations of one of the defendants and certain alleged
co-conspirators, or either of them, and the other defendant had
knowledge thereof, then the finding should be for the plaintiff is
erroneous as assuming the existence of a conspiracy and failing to
submit that question to the jury.

Poe v. Stockton & Duperow.

3. **Evidence:** DECLARATIONS OF CONFEDERATES. Declarations and acts of confederates are only admissible against their associates when such acts or declarations form a part of the *res gestæ*, and unless they accompany the prosecution of the common object are inadmissible.

4. **Replevin:** RESCISSION: LICENSE. Where a party seeking to rescind a contract of sale or purchase, has received anything of value thereon, it is a condition precedent to his right of recovery that he return whatever he may have received, but a license or interest in the business to be done under a patent right in a given territory within a given time is not such thing of value as is required to be reconveyed.

5. **Patent:** ASSIGNMENT: LICENSE. An instrument of writing, set out in the statement of the case, examined in the light of the authorities and adjudged to be license and not an assignment of a patent.

*Appeal from the Gentry Circuit Court.*—HON., CHAS. H. S. GOODMAN, Judge

REVERSED AND REMANDED.

Statement of the case by the court.

This is an action of replevin, instituted by plaintiff Poe to recover of defendants, Stockton and Duperow, a stock of watches, jewelry, etc., formerly held and owned by plaintiff at his store at Stanberry, Missouri, and which it is claimed was procured by defendants by means of a fraudulent exchange for alleged patent-right interests held and claimed by one G. W. Siddens, for whom defendant Duperow acted as agent. The patent was for a "flexible harrow," and the evidence introduced by plaintiff tends to show that he was induced to part with his goods by and through the fraudulent schemes of the agent Duperow, assisted therein by his co-conspirators Wm. A. Kenney and Elmer D. Hussey (and perhaps some others). Duperow seems to have appeared at Stanberry, where plaintiff was engaged in the jewelry business, about a week before the trade was

made. After negotiating several days an agreement was reached, and the parties signed the following papers :

"Contract for the flexible harrow, as patented by G. W. Siddens, February 17, 1885, and numbers 312, 523, G. W. Siddens, proprietor.

"This contract witnesseth that E. A. Poe and Wm. Kenney, of Stanberry postoffice, county of Gentry and state of Missouri, has identified himself with the interest of the Flexible Harrow Company, in consideration of which the proprietor of the Flexible Harrow Company has set aside to E. A. Poe and Wm. Kenney, as their interest, the sole control of the aforesaid patent for fifteen years, in and for the state of Kansas, from this twenty-ninth of April, A. D. 1887. Said proprietor of, the Flexible Harrow Company agrees to allow said E. A. Poe and Wm. Kenney to manufacture all or any part of said harrow during the term of this contract, and to warrant all harrows when adjusted as directed for five years.

"Witness our hands the day and year aforesaid.

"W. A. KENNEY,

"E. A. POE,

"G. W. SIDDENS,

"By D. H. DUPEROW."

And the plaintiff Poe signed a certificate of writing as follows :

"STANBERRY, Mo., April 29, 1887.

"This is to certify that I have sold out to D. H. Duperow all my store known as E. A. Poe's jewelry store, situate in Stanberry, Missouri, stock and fixtures and contents, for fifteen dollars.

"Witness my hand, this twenty-ninth day of April, 1887.

"E. A. POE."

Within a day or two after signing the above, Poe, Duperow and Hussey started for Kansas, as claimed by

Poe v. Stockton & Duperow.

Poe to verify the promise of Duperow that he could sell "rights" to the sum of six to seven hundred dollars within two weeks, and Poe claiming the goods were to remain at Stanberry in possession of one Underwood till their return from Kansas. Defendants say, however, that the sale was complete and the goods delivered to Duperow before leaving Stanberry for Kansas. Anyhow Duperow seems to have acquired the possession, and the goods were shortly taken to defendant Stockton's premises under a claim of purchase from Duperow. Shortly thereafter Poe returned from Kansas, denounced the entire transaction and brought this suit to recover possession of the jewelry stock. On a trial in the circuit court plaintiff had a verdict and judgment in his favor, and defendants have brought the case here by appeal.

*Ed. E. Aleshire* and *Patton & Shoemaker*, for the appellants.

(1) The verdict is against the law and the evidence. There is no evidence of fraud; the evidence clearly shows that plaintiff got for his goods all he contracted for, viz., the assignment of a half interest in a valid patent for a flexible harrow, in and for the state of Kansas. Benjamin on Sales, pp. 542–3, sec. 620, n. 11; *Jolliffe v. Collins*, 21 Mo. 338; *Shepherd v. Jenkins*, 73 Mo. 510. (2) The court erred in permitting plaintiff to introduce in evidence, over the objection of defendants, the statements and declarations of L. C. Warner, W. A. Kenney and Elmer Hussey, alleged co-conspirators with defendant Duperow, without first having a foundation therefor, by proof establishing, or tending to establish, *prima facie*, the fact of a conspiracy between Duperow and said parties, or any of them, to cheat and defraud plaintiff out of his goods. 1 Greenl. on Ev. [13 Ed.] sec. 111; Thompson on Trials, p. 351, sec. 393 and n. 1; *State v. Duncan*, 64 Mo. 262; *Laytham v. Agnew*, 70

Mo. 48; *Slate v. Barham*, 82 Mo. 73; *State v. Stair*, 87 Mo. 275; *Strohmeyer v. Zeppenfeld*, 28 Mo. App. 268. (3) The court erred in giving the first instruction for the plaintiff. The evidence shows a delivery. The contract was executed; there being a sale of the entire stock of goods, evidenced by delivery of a bill of sale, the consideration was paid and accepted, and as between the parties actual delivery was not necessary to pass the title. Benjamin on Sales, p. 327 to 330, secs. 315–319; *Cunningham v. Ashbrook*, 20 Mo. 553; *Nance v. Metcalf*, 19 Mo. App. 183. (4) The third instruction given for plaintiff is erroneous. It assumes that a conspiracy has been proved and tells the jury that if they believe from the evidence that the plaintiff was induced to enter into the contract of sale and to deliver the possession of the goods to Duperow by the false and fraudulent representations of the defendant Duperow, W. A. Kenney and Elmer Hussey, or either of them, and that defendant Stockton had notice of such fraudulent representations at any time before he paid the purchase money, they will find for the plaintiff. 1 Thompson on Trials, p. 350, sec. 393. (5) The instruction wholly ignores the question of a return, or offer to return, by plaintiff of the consideration received by him for the sale of his goods, which is a prerequisite in all suits to rescind sales for fraud, and without which plaintiff cannot maintain replevin in this case. Wells on Replevin, sec. 332; 1 Benjamin on Sales, 591–2, sec. 674, n. 25 and 26; *Cahn v. Reid & Bungardt*, 18 Mo. App. 115; Bishop on Contracts, secs. 679, 818 and 833; *Jarrett v. Morton*, 44 Mo. 275; *Machine Co. v. McBride*, 27 Mo. App. 470.

*Sam'l H. Benson* and *McCullough & Peery*, for the respondent.

(1) The evidence does not show a complete sale and delivery of the goods to Duperow. It shows on the contrary that there was no delivery of possession, and

that Duperow and Stockton obtained the possession from Underwood, the clerk, by the false statement that he had "made it all right with Poe." It also shows that he was imposed on as to the value of the patented article. That it was of no value over any other harrow. That plaintiff was induced to enter into the trade under the belief that Kenney was in partnership with him, when he was not. On either theory the plaintiff was entitled to judgment. Wells on Replevin, sec. 318, *et seq. ; Tufts v. Thompson*, 22 Mo. App. 564; *Brunswick Co. v. Martin*, 20 Mo. App. 158; 1 Benj. on Sales [Ed. 1884] secs. 366, 425, *et seq.; Hicks v. Stephens*, 11 N. E. Rep. [Ill.] 241; *Farwell v. Hanchett*, 11 N. E. Rep. [Ill.] 875. (2) There was no error in admitting testimony. The court may, in its discretion, admit evidence of the declarations of co-conspirators or others interested with the defendant, without requiring a *prima facie* case as to the combination or interest to be made out. Thompson on Trials, sec. 393, and cases cited. (3) Plaintiff's third instruction is not erroneous. The question as to the admissibility of the acts and declarations of Kenney and Hussey was for the court to decide. Those acts and declarations were admissible, on either of two theories : *First.* That there was a conspiracy or combination between Duperow, Kenney and Hussey. *Second.* That in making the trade Kenney and Hussey were acting as the agents of Duperow. The evidence was abundantly sufficient to sustain either of these theories. But here the instrument or contract executed by Duperow to Poe does not contain a single word of conveyance, does not pretend to be anything more than a contract of association, or partnership, and a license to manufacture and warrant the harrows for five years. *Thebeath v. Mfg. Co.*, 3 Fed. Rep. 143; *Douton v. Mill Co.*, 9 Fed. Rep. 402; *Gayler v. Wilder*, 10 How. [U. S.] 477; Curtis on Patents, secs. 212, 213.

GILL, J.—I.   We shall first refer to points raised by this appeal which, in our opinion, must result in a reversal of this case.

(*a*)   The court at the instance of the plaintiff, among others gave the following instruction :

"If the jury believe from the evidence that the plaintiff did not deliver the possession of the stock of goods in controversy to the defendant Duperow, they will find for the plaintiff."

Thus instructing the jury was, in this case, clearly erroneous.   It might be, and doubtless was, argued to the jury on this instruction, that whatever were the *rights of property* as to this stock of goods, unless the vendor did deliver *possession* to the vendee, the vendor could maintain replevin.   In other words, by this instruction the jury was told that even though Duperow had bought and paid for the goods, in entire good faith, yet, if Poe did not in fact give over the possession, the right to maintain replevin continued with Poe, though he had no title whatever in the property.   It is well settled that replevin cannot be maintained upon a mere naked possession without a general or special property in the plaintiff.   *McMahill v. Walker*, 22 Mo. App. 170; *Nance v. Metcalf*, 19 Mo. App. 183; Benjamin on Sales, sec. 315.

"It is an inflexible rule in replevin that the plaintiff must show himself to be the *owner* of the goods for which the suit was brought," etc.   Wells on Replevin, sec. 168.   It is the right of possession *flowing from* a *right of property*, general or special, that must rest in the plaintiff to justify the action in replevin.   Authorities, *supra*, and *Broadwater v. Darne*, 10 Mo. 277; *Wright v. Richmond*, 21 Mo. App. 76.

(*b*)   At the instance of the plaintiff the trial court also gave the following instruction :

"Although the jury may believe from the evidence that the plaintiff entered into a contract with the

defendant Duperow, by which he sold the goods in controversy to him, and delivered the possession thereof to him, yet if they further believe that the plaintiff was induced to enter into such contract and to deliver such possession by the false and fraudulent representations of the defendant Duperow, William A. Kenney and Elmer D. Hussey, or either of them, and that defendant Stockton had notice of such fraudulent representations at any time before he paid the purchase money, then they will find for the plaintiff.''

The giving of this instruction was likewise erroneous, in that it assumes as true one of the issues in the case. It holds defendants, Stockton and Duperow, answerable for any faults or fraudulent representations of Kenney or Hussey, without proof that Kenney and Hussey were parties to a conspiracy with Duperow in acquiring the goods. The court by the instruction seems to determine a fact that should be left to the jury. It is true that when evidence is offered of the acts and declarations of parties charged as conspirators the court will admit such acts and declarations apparently made in furtherance of the common design, when in the opinion of the judge there is proof sufficient to establish, *prima facie*, the fact of conspiracy, yet the decision of the question whether or not there was a conspiracy must in the end be submitted to the jury for their determination. 1 Greenleaf on Ev., sec. 111; 1 Thompson on Trials, sec. 393. Before, then, the jury would be authorized to hold defendants for the fraudulent conduct of Kenney and Hussey, they should have believed in the existence of a conspiracy between said Kenney, Hussey and Duperow to defraud the plaintiff out of his property, of which Stockton, too, had notice.

(*c*) Among the many assignments of error, defendants' counsel complain repeatedly of the court's action in permitting proof of the various acts and declarations of the alleged conspirators, not parties to this suit, to

the prejudice of defendants' rights. Without going over these in detail it seems well to remind the trial court of the rules generally understood for the admission or rejection of such testimony. Declarations or acts of confederates are only admissible against their associates when such acts or declarations form a part of the *res gestæ*, and unless these acts or declarations accompany the prosecution of the common object they are inadmissible. The same rule applies here as in case of principal and agent. While in the prosecution of the main design, the conspirators directing their efforts towards one common object, they are agents for each other, and hence within the scope of this common design their acts and declarations are to be charged to each and all of the conspirators. When, however, the work, design or object is accomplished or abandoned, then the agency is at an end, and acts and declarations thereafter done or made by either cannot be used against the other. *State v. Duncan*, 64 Mo. 266; *Laytham v. Agnew*, 70 Mo. 51; *Nicholson v. Railroad*, 82 Mo. 73; *Strohmeyer v. Zeppenfeld*, 28 Mo. App. 273; *State v. Stair*, 87 Mo. 275; 1 Greenleaf on Ev., sec. 111.

II. Defendant's counsel further insist that plaintiff must fail in this suit because he did not return the consideration alleged to have been received for the purchase of the jewelry stock. The law in this regard is well understood, but at times its application is difficult. We concur in counsel's statement of the law, to-wit : That, where a party, seeking to rescind a contract of sale or purchase, has received anything of value thereon, it is a condition precedent to his right of recovery that he return whatever he may have received. And this for the very good reason, that before a party shall demand the return of goods, out of which he claims to have been defrauded, he should, in common honesty, restore to the other party all that he has received on that account. *Cahn v. Bungardt*, 18 Mo. App. 115;

Bishop on Contracts, sec. 679; *White Sewing Machine Co. v. McBride*, 27 Mo. App. 470.

If, then, Poe, by the alleged conveyance to him, acquired anything—any property—which can be re-conveyed, then, under the doctrine above noted, he cannot maintain an action of replevin for these goods until such re-conveyance is made. This brings us to a construction of the so-called "Contract for the flexible harrow," signed by W. A. Kenney, E. A. Poe and G. W. Siddens, by D. H. Duperow, quoted in full in the statement of this case. The meaning of this "contract" is to us rather dubious. Is it an appointment of Poe and Kenney as sole agents to control and look after the rights and interests of the "Flexible Harrow Company" in the state of Kansas for the period of fifteen years, or is it, in effect, a mere *license* "to manufacture all or any part of said harrow during said term of fifteen years?" It can hardly be construed as an *assignment* of a patent. "In order to constitute an *assignment* of a patent, there must be a grant which vests in the grantee the exclusive right to the whole patent, or some undivided part of it, or to the whole or an undivided part of some territorial interest." While a *license* is defined, by the same author, as an authority to exercise some of the privileges secured by the patent; but which still leaves an interest in the monopoly in the patentee. Curtis' Law of Patents, secs. 193, 213, etc.; *Taylor v. Wilder*, 10 How. (U. S.) 495; see, also, 3 Fed. Rep. 147; *Brooks v. Byam*, 2 Story (U. S. C. C.) 525.

This instrument does not purport, in terms, to convey to Poe and Kenney the "exclusive right to the whole patent" for the state of Kansas, but rather takes these parties into the company, and sets off as their respective duties an interest in the business to be done in the state of Kansas for the next fifteen years—permitting the said Poe and Kenney, during the said fifteen years, to manufacture the said harrow. The complete

assignment of the monopoly for the state of Kansas would vest the right to sell territory, and to manufacture, or permit others to manufacture and sell, the patented article in the state of Kansas. The aforementioned "contract," which gave Poe all he received for his stock of jewelry, conveyed no such rights, and was, therefore, nothing more than a license fixed to terminate in fifteen years.

Since then nothing was assigned or conveyed to Poe; he had nothing to re-assign or re-convey. He has done all he could to restore the said Duperow to the same position he found him—has renounced his agency or license, and brought this action to redeem his goods, and, if in other respects he should show himself entitled, will be permitted to recover without any *re-conveyance* to Duperow, or to said Siddens, or said Flexible Harrow Company.

For the reasons, then, hereinbefore given, we must reverse the judgment, and remand the cause for a new trial.   All concur.