Eacock v. State—169 Ind. 488.

## EACOCK v. THE STATE.

[No. 20,936. Filed December 12, 1907.]

1. STATUTES.—*Subsequent Change.*—*Crimes.*—*Procedure.*—A prosecution based upon acts committed in 1904 was not affected nor governed by the act of 1905 (Acts 1905, p. 584, §1866 *et seq.* Burns 1908) codifying the law of crimes and criminal procedure. p. 491.

2. BLACKMAILING.—*Definition.*—The crime of blackmailing consists in the extortion from another of money or thing of value by means of menaces of personal injury or by threats of accusing another of crime or of conduct which, if true, would tend to degrade and disgrace. p. 492.

3. INDICTMENT AND INFORMATION.—*Conspiracy to Commit Felony.* —An indictment for a conspiracy to commit a felony must set forth the elements of the felony intended as fully as an indictment for such felony itself. p. 492.

4. EVIDENCE.—*Guilty Knowledge.*—*Intent.*—*Other Similar Crimes.* —In a prosecution for conspiracy to blackmail, evidence concerning other alleged conspiracies to blackmail, engaged in by defendant, is admissible as tending to show guilty knowledge, intent and motive. p. 492.

5. TRIAL.—*Instructions.*—*Limiting Evidence.*—*Conspiracy to Blackmail.*—*Similar Crimes.*—An instruction in a prosecution for conspiracy to blackmail, charging that the evidence of defendant's commission of other similar crimes was not evidence that the conspiracy charged was formed, but that such evidence should only be considered to determine intent and motive, and then only after the jury were convinced beyond a reasonable doubt that the alleged conspiracy had been formed, is correct. p. 493.

6. EVIDENCE.—*Letters.*—*Conspiracy to Blackmail.*—In a prosecution for conspiracy to blackmail by the use of verbal threats, a letter, written by defendant to the prosecuting witness, calling for an immediate meeting between such witness and defendant for the purpose of an alleged settlement, is admissible to illustrate the purpose of the meeting held in accordance therewith, and as throwing light on the statements made thereat. p. 493.

7. SAME.—*Acts and Declarations of Conspirators.*—After *prima facie* proof of a conspiracy, the acts and declarations of conspirators, in pursuance of the plan and with reference to the common object, are admissible against any one thereof; and the

rule is the same regardless of when one becomes a party to such conspiracy. p. 498.

8. EVIDENCE.—*Inducing Witnesses to be Absent from Trial.*—Evidence that defendant, by his attorney or others induced, by the use of money, or otherwise, adverse witnesses to absent themselves from his trial, is admissible against him. p. 499.

9. SAME.—*Connivance of Defendant to Induce Witnesses to be Absent.*—Whether the defendant connived with others to induce adverse witnesses to absent themselves from his trial is a question of fact for the jury; and the jury is not concluded by the judge's admission of evidence admitted upon a mere *prima facie* showing of such connivance, the rule being the same as in cases of conspiracy. p. 500.

10. TRIAL.—*Instructions.—Procuring Absence of Adverse Witnesses.—Admissibility of Evidence for Judge.*—An instruction that if the jury find that defendant was not a party to the absenting of adverse witnesses, what was said and done in reference thereto should not be considered against him, is not bad as making the jury the judges of the admissibility of the evidence. p. 500.

11. EVIDENCE.—*Improper Relations.—Blackmail.*—In a prosecution for conspiracy to blackmail, the charge being that defendant and a certain married woman extorted money, on behalf of such woman's husband and herself, from the prosecuting witness because of alleged improper conduct with such woman, evidence of such alleged improper conduct is not admissible in defense. p. 500.

12. WITNESSES. — *Cross-Examination. — Limiting. — Discretion of Trial Court.*—It is not error for the trial judge to limit the cross-examination of a witness to the subject covered by the examination in chief, the procedure being to make the witness the cross-examining party's own, and interrogate him in chief as to such outside matters. p. 501.

13. SAME.—*Cross-Examination.—Abuse of Discretion.—Appeal.*—A trial judgment will be reversed for the improper limitation of the right to cross-examine only where there has been an abuse of discretion, such limitation being a matter in the legal discretion of the trial judge. p. 501.

14. TRIAL.—*Instructions.—How Considered.*—The instructions in a case must be considered in reference to each other; and if the case has been given to the jury correctly and fairly, even though some instruction standing alone would be abstractly erroneous, the case will not be reversed. pp. 502, 505, 506.

15. SAME.—*Instructions.—Insubstantial Defects.*—Mere verbal inaccuracies or technical errors in instructions, or erroneous instructions not invading the substantial rights of the parties, are not ground for reversal. p. 502.

16. CONSPIRACY.—*Formation of.*—A conspiracy may be formed without any formal agreement, it being sufficient if the minds

meet understandingly to bring about the agreement to do the acts and commit the offense charged.  p. 502.

17.  CONSPIRACY.—*Evidence to Sustain.*—A conspiracy may be proved by direct or circumstantial evidence; and the concurrence of will may be established by joint acts, or by separate acts leading to the same unlawful result.  p. 503.

18.  SAME.—*Liability of Participants.*—One conspirator is liable for the separate acts of his confederates done in furtherance of the conspiracy; and a person coming into such conspiracy after the formation thereof is liable the same as an original conspirator.  p. 503.

19.  SAME.—*Trial.—Judgment.*—If conspirators are tried separately they may be sentenced separately as tried and found guilty.  p. 504.

20.  SAME.—*Allegations Naming Conspirators.—Proof of Part.*—On an indictment charging that defendant, with certain others, committed the crime of conspiracy, he may be convicted on proof of his conspiracy with all or any of such other persons.  p. 504.

21.  TRIAL.—*Instructions.—Negativing Good-Faith Transaction.— Conspiracy.*—An instruction that if the jury should find beyond a reasonable doubt from the evidence that defendant did not enter into the employment of collecting money from the prosecuting witness in good faith, but for the purpose of extorting money by blackmail from said witness, as charged, he may be found guilty, is not bad for the alleged reason of requiring defendant to establish the fact that he was acting in good faith, instead of requiring the State to prove he was not acting in good faith.  p. 504.

22.  SAME.—*Instructions.—Erroneous.—Requesting Similar One.*— Appellant cannot successfully complain of the court's giving an alleged erroneous instruction, where he has requested one substantially similar, and has alleged error for the refusal to give same.  p. 505.

23.  SAME.—*Instructions.—Good Character.*—An instruction that if the jury, after considering all the evidence, including that of defendant's good character, entertain a reasonable doubt of his guilt, they should acquit, but if the evidence convinces them, beyond a reasonable doubt, of defendant's guilt they might find so notwithstanding his good character, fairly states the law on such subject.  p. 506.

24.  CRIMINAL LAW.—*Defenses.—Good Character.*—Where defendant's guilt of a crime is proved beyond a reasonable doubt, previous good moral character will not entitle him to an acquittal, such character giving no person a license to commit a crime.  p. 506.

25.  TRIAL.—*Instructions.—Request for.—Record.*—Where requested instructions are not shown by the record to have been subscribed by the party or his counsel, and presented to the court before the

beginning of the argument, no questions can be presented thereon, on appeal. p. 507.

26. TRIAL.—*Instructions.—Duplication of.*—It is not erroneous to refuse instructions requested which are substantially covered by those given. p. 507.

27. APPEAL.—*Weighing Evidence.*—The Supreme Court will reverse a case on the ground that the verdict is contrary to the law, and to the evidence, only where there is no evidence to prove some essential fact. p. 507.

From Tippecanoe Circuit Court; *Henry H. Vinton,* Special Judge.

Prosecution, by the State of Indiana, against Joseph Eacock. From a judgment of conviction, defendant appeals. *Affirmed.*

*Haywood & Burnett,* for appellant.

*James Bingham,* Attorney-General, *E. M. White, H. M. Dowling, A. G. Cavins, Daniel P. Flanagan,* Prosecuting Attorney, and *Will R. Wood,* for the State.

MONKS, C. J.—This is a prosecution against appellant and Lulu B. Grimes, charging them with conspiracy to blackmail Will E. Kessler. A trial of appellant on said charge resulted in a verdict of guilty, and over a motion for a new trial final judgment was rendered against him.

As the transactions upon which this prosecution is based occurred in 1904, the same is not in any respect governed by the crimes act of 1905, but by the crimes act and code of criminal procedure of 1881, and the amendments thereof in force in 1904. *Miller* v. *State* (1905), 165 Ind. 566, 570, 571; *Stieler* v. *State* (1906), 166 Ind. 548; *State* v. *Thomson* (1906), 167 Ind. 96; *State* v. *Hazzard* (1907), 168 Ind. 163.

The errors assigned are that the court erred (1) in overruling appellant's motion to quash the indictment; (2) in overruling appellant's motion for a new trial.

So much of the conspiracy and blackmailing statutes as needs to be considered reads: "Any person or persons who

shall unite or combine with any other person or per-

2. sons for the purpose of committing a felony * * *
shall, upon conviction thereof, be fined * * * and
imprisoned in the state prison," etc.  §2260 Burns 1901,
§2139 R. S. 1881.  Also "Whoever, either verbally or by
any letter or writing or any written or printed communica-
tion, * * * accuses or threatens to accuse * * * any
person * * * of any immoral conduct, which, if true,
would tend to degrade and disgrace such person, or in any
way to subject him to the ridicule or contempt of society
* * * with intent to extort or gain from such person any
chattel, money, or valuable security, * * * is guilty of
blackmailing, and shall, upon conviction thereof, be im-
prisoned in the state prison," etc.  §1999 Burns 1901, §1926
R. S. 1881.  The gist of the felony defined as blackmailing
is the extortion of money, chattels or valuable securities
from a person by menaces of personal injury or by threaten-
ing to accuse him of crime, or of any immoral conduct,
which, if true, would tend to degrade and disgrace such
person.  In pleading a conspiracy to commit a felony the
essential elements of the felony intended must be as

3. fully set forth as in an indictment for such felony.
Gillett, Crim. Law (2d ed.), §310; McKee v. State
(1887), 111 Ind. 378; Musgrave v. State (1893), 133 Ind.
297, 305, 306.  The indictment fully complies with this re-
quirement and is sufficient under the rule declared in Mot-
singer v. State (1890), 123 Ind. 498; Utterback v. State
(1899), 153 Ind. 545.  The court did not err in overruling
appellant's motion to quash.

It is claimed by appellant that the court erred in permit-
ting the State to introduce evidence, concerning alleged
conspiracies by appellant to blackmail, other than

4. that set forth in the indictment.  Such evidence was
properly admitted as tending to show the guilty
knowledge, intent and motive of appellant in doing what is
charged in the indictment.  Higgins v. State (1901), 157

Ind. 57, and authorities cited; *Sanderson* v. *State* (1907), *ante,* 301; *Crum* v. *State* (1897), 148 Ind. 401, 411-413; *Strong* v. *State* (1882), 86 Ind. 208, dissenting opinion of Elliott, J., pp. 215-219, 44 Am. Rep. 292, which was approved in *Crum* v. *State, supra,* p. 412; *State* v. *Lewis* (1895), 96 Iowa 286, 297, 298, 65 N. W. 295; Gillett, Crim. Law (2d ed.), §870; 12 Cyc. Law and Proc., 406-411. As was said in Gillett, Indirect and Collat. Ev., §57, pp. 79, 80: "Collateral crimes may be shown when they tend to prove malice, guilty knowledge, intent, motive or the like, if such element enters into the offense charged. Conspiracy cases furnish a common illustration of this doctrine." The court correctly instructed the jury, in effect, that such testimony was not evidence that the conspiracy charged was formed, but that the same should only be considered by the jury if they found from the other evidence, beyond a reasonable doubt, that the alleged combination had been formed, and then only to determine the intent and motive of the parties thereto.

The State read in evidence, over the objection of appellant, a letter, signed by him, written to Will E. Kessler, which contained the following: "C. E. Grimes of this city has employed me in the matter wherein he claims that you have alienated the affections of his wife, and seduced her. I shall be glad to see you upon this matter forthwith. If immediate attention is not given it, action will be instituted immediately." It appears from the evidence of Lulu B. Grimes, who was jointly indicted with appellant, and who was a witness for the State, that she wanted "to get even" with Will E. Kessler, and told Mrs. Grace Brown, an intimate acquaintance, of her trouble with Kessler. At the request of Mrs. Brown, she went with her to the office of appellant, an attorney at law, where Mrs. Brown, who knew appellant, introduced her to him. She gave the following testimony in regard to the conspiracy charged: "My name is Lulu Bessie Grimes.

My husband's name is Charles E. Grimes. We were married eleven years last June. Have known the defendant, Joseph Eacock, about eighteen months. Am acquainted with Grace Brown, wife of Thomas Brown. I visited the office of Mr. Eacock in August, 1904. Called there with Mrs. Grace Brown, who introduced me to Mr. Eacock. Mrs. Brown told him of the purpose of my visit, that I was an acquaintance of hers and she wanted him to do the right thing by me. He said, 'Grace, I usually do it. I always did it by you.' I told Eacock I had an engagement with Mr. Kessler, and he had stood me up. He said, 'That is all right; I am looking for such fish as that, and I will attend to him.' I said, 'This will not get me in trouble, will it?' He said, 'None in the least; I will attend to that.' I stated to Mr. Eacock what Mrs. Brown had told me that I was a fool for working the way I had worked the last few years; there were ways of making money easier than that, and Mr. Eacock was the man that would get it. She persuaded me to go up there with her that afternoon and introduced me to Mr. Eacock. Giving my own self a compliment, he said, Grace was right, that I was too good looking a woman to work the way I was working. He said he would fix Will Kessler for that. I had known Kessler almost all my life. On that occasion Eacock asked my husband's name. I told him, and he said that was all he wanted; for me to go on, and he would call me back to the office when he needed me. He asked me if Mr. Grimes had any intention to leave the city for a short time, and, if not, could I arrange any way he would be out of the city. I told him the following week he was going to Louisville. My husband went there to the encampment of Knights of Pythias, Uniform Rank. It was about August 12. He came back about August 19. I next saw Mr. Eacock with reference to this matter the following Tuesday or Wednesday at his office. He called me to his office. When I went up he wanted to know where I had been all this time, that he

could not find me in the city. I told him I had been out
to Thorntown. He said, 'Well it was dead easy; I fixed
Kessler all right.' He said, 'Here is $75; you take that
and keep your mouth shut.' He.said something to me then
about what I could do in the future. He told me if I would
listen to him and do as he wanted me to do, inside of six
months or a year I would be independently rich. He asked
me if I would not like to make a good roll of money. I said,
'I guess not, any more.' He said, 'You are foolish.' He
said, 'Here is Grace, I have got her $10,000 within the last
few years'; and he said, 'if you go down and see —————
or —————, I don't know which, and ask him for a loan
of $50—don't forget to put on your best bib and tucker and
be sure and wear a veil—ask him for a loan of $50, and in
return he will ask you for security, and you disremember
the security and ask him to call at your house.' He told
me when I first went up he had got $250; then when I went
again he said $300 was all he could get, and it was 'dead
easy.' He stated to me other persons he had gotten money
from in this way with Mrs. Brown, and others here in
the city. At another time there was a business man on
Main street mentioned. Mr. Eacock said he would threaten
to file suit against Kessler for alienating my affections
away from my husband. My husband was not with me on
any of these occasions when I visited Mr. Eacock's office.
My husband had no knowledge of the transactions between
me and Eacock. After the grand jury commenced the in-
vestigation last winter Mr. Eacock said I must persuade
my husband that he had employed him to protect himself
as well as me.''

On cross-examination she testified: ''Got acquainted with
Mrs. Brown previously to October 9, 1903. Acquaintance
became intimate. Were engaged in lodge affairs together.
Had no acquaintance with Eacock before that. Mrs. Brown
accompanied me to Eacock's office. The first conversation
with Eacock was in the main room of office. No one in the

room other than Eacock, Mrs. Brown and myself. When Mrs. Brown introduced me to Eacock, Mrs. Brown and Mr. Eacock had a little conversation, and then I talked with Mr. Eacock. Did not hear all of conversation that Mrs. Brown had with Eacock. Don't remember conversation that I heard between Mrs. Brown and Eacock well enough to detail now. Cannot relate the substance of it any better than I did yesterday. I do not know what Mrs. Brown and Eacock said to each other when they were talking aside from me. I went to Eacock's office to give Mrs. Brown her wishes. I cannot say that I had any intention at my first call there. Mrs. Brown introduced me to Eacock and he accepted the introduction as I did, and she told him I was an acquaintance of hers and she wanted him to do the right thing by me. He said, 'Grace, I usually do it. I always did it by you.' She went away and Mr. Eacock and I had our little conversation. He said, 'That is all I want to know, I will do the balance.' Mrs. Brown went down the street, I do not know where. Only went there for counsel about the Kessler matter. It was only a purpose to get even, was all I had in mind, to get even with Kessler. Wanted Mr. Eacock to do for me whatever he thought was best, not to cause any trouble. Told him I had an engagement with Kessler and he did not keep it. Did not tell him what kind of engagement I had. He seemed to understand without being told. It was an engagement to meet Mr. Kessler at Mrs. Porter's. Did not tell him for what purpose. I said that Kessler had stood me up and I wanted to get even. By his having stood me up, I meant he did not keep his engagement. Think I told him when it was that Kessler had failed to come to time. I answered his questions that he asked. He asked me what date, and I tried to give it to him. I think about the last of July. I told him the place where Kessler was to meet me. He said he would attend to the balance; that he was after such fish as that. He said if I would do as he wanted me to he would have me independ-

ently rich in six months. He said if I would go to different ones and make engagements that he would attend to the rest. He suggested that I go to —————, and he told me of different other ones that would be easy ones. Mr. ————— was another. There were different ones. I said, 'I don't want to get in no box, Mr. Eacock.' He said, 'You will get in no box.' He said, 'If you will do as I say you will be rich in six months.' He told me I was too good looking a woman to make my living by hard work. He said I could make my living easily by pulling people's legs. Mr. Eacock told me his plans, and the way he proposed to go after Kessler. I was to stay in the background; was not asked to do anything in accomplishing that purpose. I was simply to allow him to manage the thing, and everything that was to be done he was to do it. Mr. Eacock asked me if Kessler owned property. I told him I thought he did, but it was in his wife's name. Do not remember that he stated any amount of money he expected to get out of him. The understanding was he was to take my case and manage it to the best of his ability and bring Kessler to time for whatever he could."

Charles E. Grimes, the husband of said Lulu B. Grimes, testified that he never employed appellant in said matter of Kessler, and had no knowledge of it until after it was settled, when some one "threw it up to him." It appears from the evidence of Will E. Kessler, a witness for the State, that he received said letter in the morning, and at once went to LaFayette and employed a lawyer, after which appellant come to the office of Kessler's lawyer, where Kessler at first refused to settle for the amount appellant demanded, and that thereupon appellant said he would bring proceedings before evening. When recalled, Kessler testified as follows: "I told him [appellant] I would not give them over $200, he turned his back upon me and said, 'I will bring suit before night if the claim is not settled to-

day,'—if I didn't give $250.'' This was about 10 o'clock or 10:30 o'clock in the forenoon. After this, about noon, Kessler settled with appellant for $250, paying $300—$250 for appellant and $50 for his own lawyer. He testified that he settled and paid the money ''to keep down notoriety.'' Appellant gave a receipt for said $250, ''in full of all demands to date of every kind, character and description growing out of tort or contract due or claimed to be due to us or either of us, there being a joint and several claim,'' and signed the same: ''Joseph Eacock, attorney for C. E. Grimes and Bessie Grimes, his wife.'' While it was necessary for the State to prove verbal threats, as alleged in the indictment, said letter was properly admitted as tending to show why the parties met; and what was said and done at said meeting, must be considered in the light thereof. The verbal threats, made by appellant when Kessler refused to settle for the amount demanded, ''that he would bring proceedings before evening,'' or ''that he would bring suit before night if the claim is not settled to-day,'' must be considered in the light of said letter, as well as in the light of what was said at the time of said interview. The letter was a part of the transaction between appellant and Kessler as much as what was said at the interview between them.

It was said by this court in *Card* v. *State* (1889), 109 Ind. 415, 418, 419, quoting from 1 Greenleaf, Evidence (Lewis's .ed.), §111: '' 'A foundation must first be laid, by proof, sufficient in the opinion of the judge, to establish, *prima facie*, the fact of conspiracy between the parties, or proper to be laid before the jury, as tending to establish such fact. The connection of the individuals in the unlawful enterprise being thus shown, every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act and declaration of them all; and is therefore orginal evidence against each of them. It makes no difference at

what time any one entered into the conspiracy. Every one, who does enter into a common purpose or design, is generally deemed, in law, a party to every act, which had before been done by the others, and a party to every act, which may afterwards be done by any of the others, in furtherance of such common design. * * * The acts and declarations, thus admitted, are those only which were made and done during the pendency of the criminal enterprise, and in furtherance of its objects.' "

In this case the alleged conspiracy was still pending when said letter was sent to Kessler by appellant, and, as the same was in furtherance thereof it was admissible in evidence under said rule, not only as against appellant, but against all the parties thereto. It follows that the court did not err in permitting said letter to be read in evidence.

During the progress of the trial the court, over the objection of appellant, admitted evidence that Allen Boulds, an attorney for appellant, and one Pauley, had, by persuasion and the use of money, induced Lulu B. Grimes and Charles E. Grimes, her husband, witnesses for the State, to leave this State and go to Oklahoma, and not to appear and testify as witnesses on the trial of the cause. Evidence that an accused has procured or attempted to procure the absence of a witness and thereby prevented, or attempted to prevent, his testifying is admissible against him. Underhill, Crim. Ev., §121; Wharton, Crim. Ev. (9th ed.), §749, p. 644; Lawson, Presumptive Ev. (2d ed.), 622, 624, 625; *Collins* v. *Commonwealth* (1876), 75 Ky. 271, 272; *State* v. *Barron* (1864), 37 Vt. 57, 61; *Kirkaldie* v. *Paige* (1845), 17 Vt. 256; *Carpenter* v. *Willey* (1892), 65 Vt. 168, 26 Atl. 488; *Cruikshank* v. *Gordon* (1890), 118 N. Y. 178, 187, 23 N. E. 457. Evidence that third persons procured or attempted to procure the absence of witnesses is admissible against the accused if he was privy thereto. The evidence given on behalf of the State showed, *prima facie* at least, that appellant was privy to

what was done by Boulds and Pauley, and the court therefore properly admitted said evidence. The court by admitting said evidence did not thereby conclude the jury from determining from the whole evidence, when they came to deliberate upon the verdict, whether appellant was privy to procuring or attempting to procure the absence of said witnesses. The rule is the same as in a charge of conspiracy, where, if the court determines that there is sufficient evidence to establish *prima facie* the fact of the conspiracy, the declarations and acts of each conspirator during the pendency of the criminal enterprise are admitted in evidence against all. But ultimately it is for the jury to determine from the whole evidence whether any conspiracy has been shown, and, if they find none has been established, it is their duty not to consider the acts or declarations of the supposed conspirators which have been admitted. Wharton, Crim. Ev. (9th ed.), §698; 3 Ency. Ev., 428; 1 Thompson, Trials, §393; *Commonwealth* v. *Brown* (1860), 14 Gray (Mass.) 419; *Poe* v. *Stockton* (1890), 39 Mo. App. 550, 557. It was upon this theory that the court below instructed the jury that, unless they found from the evidence that appellant was privy to the removal of said witnesses from the State, they should not consider the evidence given in regard to procuring said removal, but disregard the same. This instruction did not make the jury the judges of the admissibility of the evidence as claimed by appellant, but properly left to the jury the credibility of witnesses and the weight of their evidence. There was no error in admitting in evidence what was said and done by Boulds and Pauley in procuring said witnesses to go beyond the jurisdiction of the court.

Appellant complains of the action of the court in excluding evidence offered by him to show the sexual relations between Kessler and Lulu B. Grimes, and the instruction of the court in regard to the same. Whether said Kessler was guilty of the immoral conduct

claimed was wholly immaterial, and the court committed no error in so instructing the jury. *Motsinger* v. *State* (1890), 123 Ind. 498, 501; *Kessler* v. *State* (1875), 50 Ind. 229, 233; *People* v. *Wightman* (1888), 104 N. Y. 598, 599, 11 N. E. 135. It was said by this court in *Kessler* v. *State, supra:* ''The crime charged does not consist in the threatening to charge an innocent party with crime or with degrading and disgraceful immoral conduct, but consists in threatening to make such accusation with the intent to extort or gain from any person his chattels, money, etc. * * * Although a person may have been guilty of crime or immorality, there is no reason why his money or property should be extorted from him by threatening to accuse him thereof. It may be for the interest of society that the guilty shall be brought to trial or punishment, but no public interest could possibly be subserved by allowing accusations to be made, even against the guilty, for the sole purpose of extortion.'' The court committed no error in excluding said evidence.

It is a settled rule in this State that it is not error for the trial court to limit questions on the cross-examination of a witness to the subject covered or entered upon in the examination in chief. *Hunsinger* v. *Hofer* (1887), 110 Ind. 390, 394; *City of Aurora* v. *Cobb* (1863), 21 Ind. 492, 511, 512; *Patton* v. *Hamilton* (1859), 12 Ind. 256. If he wishes to examine his opponent's witnesses as to new matter, he can do so by calling them afterwards as his own witnesses. *Patton* v. *Hamilton, supra.* This disposes of the points made by appellant upon the refusal of the trial court to permit him to propound certain questions on cross-examination to Charles E. Grimes, a witness for the State.

The cross-examination of a witness and the extent to which it may be carried rests in the sound discretion of the trial court, and only an abuse of this discretion is a cause for a reversal on appeal. *Smith* v. *State* (1905), 165 Ind. 180, 183; *Shields* v. *State* (1897),

149 Ind. 395, 402, and cases cited; Ewbank, Trial Ev., §155. There was no abuse by the trial court of this discretion in the cross-examination of said Charles E. Grimes. On the contrary, the court could have limited said cross-examination much more than it did without violating said rule. Appellant complains of a part of the instructions given by the court to the jury. It is settled law in this. State that instructions are considered with reference to each other, and as an entirety, and not separately or in dissected parts; and if the instructions as a whole correctly and fairly present the law to the jury, even if some particular instruction, or some instruction standing alone, or taken abstractly, and not explained or qualified by others, may be erroneous, the cause will not be reversed. *Shields* v. *State, supra,* and cases cited; *Rains* v. *State* (1899), 152 Ind. 69. Mere verbal inaccuracies in instructions, or technical errors in the statement of abstract propositions of law, furnish no grounds for reversal when they result in no substantial harm to the defendant, or if the instructions, taken as a whole, correctly state the law applicable to the facts of the case; nor is the giving of an erroneous instruction reversible error, when it appears that the substantial rights of the defendant have not been prejudiced thereby. *Shields* v. *State, supra,* pp. 406-408, and cases cited; *Harris* v. *State* (1900), 155 Ind. 265; *Heyl* v. *State* (1887), 109 Ind. 589, 593; *Musser* v. *State* (1901), 157 Ind. 423, 444, 445; *Cleveland, etc., R. Co.* v. *Miller* (1905), 165 Ind. 381, 386, 387; *Knapp* v. *State* (1907), 168 Ind. 153.

Complaint is made by appellant of certain of the instructions given by the court in regard to the crime of conspiracy and the manner and means of its proof. It is well settled that it is not essential to the formation of a conspiracy that there should have been any formal agreement between the parties to do the acts charged. It is sufficient if the minds of the parties meet understandingly

so as to bring about an intelligent and deliberate agreement to do the acts and commit the offense charged, although such agreement be not manifested by any formal words. Concurrence of sentiment and coöperative conduct in an unlawful and criminal enterprise, and not formality of speech, are the essential ingredients of criminal conspiracy. The concurrence of will which is essential to the offense 17. may be proved by direct or circumstantial evidence or both. The fact may be inferred where the parties are apparently pursuing the same object, whether acting separately or together, by common or different means, all leading to the same unlawful result. Gillett, Crim. Law (2d ed.), §311; 8 Cyc. Law and Proc., 621, 622; 3 Greenleaf, Evidence, §93; 3 Russell, Crimes (9th Am. ed. by Sharswood), \*165-\*168; 2 Wharton, Crim. Law (10th ed. by Lewis), §§1398, 1399, 1401; Wharton, Crim. Ev. (9th ed.), §§32, 698; *McKee* v. *State* (1887), 111 Ind. 378, 383; *Archer* v. *State* (1886), 106 Ind. 426, 432; *Musser* v. *State, supra,* and authorities cited. When two or more persons combine to commit a crime, each is criminally re- 18. sponsible for the acts of his confederates committed in the furtherance of the common design. In contemplation of law the act of each is the act of all. A person coming into a conspiracy after it is formed, and assisting in its execution, is deemed a party thereto, and is liable therefor. The coming in of such person does not destroy the identity of the conspiracy, but it continues the same conspiracy. 2 Wharton, Crim. Law (10th ed. by Lewis), §1399; 8 Cyc. Law and Proc., 641-643, 658 note 68; 1 Greenleaf, Evidence (15th ed. by Croswell), §111; 3 Greenleaf, Evidence (16th ed. by Harriman), §93; *Blain* v. *State* (1894), 33 Tex. Cr. 236, 250, 26 S. W. 63; *Ochs* v. *People* (1888), 124 Ill. 399, 421, 422, 16 N. E. 662; *Spies* v. *People* (1887), 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. 320; *United States* v. *Nunnemacher* (1876), 7 Biss. (U. S.) 111, 123, Fed. Cas. No. 15,902; *McKee* v. *State,* 111 Ind.

378, 382, 383; *Den* v. *Johnson* (1840), 18 N. J. L. 87, 89, 90; *State* v. *Crab* (1894), 121 Mo. 554, 563, 26 S. W. 548.

If several are charged with conspiracy and tried separately a judgment may be pronounced against one before a conviction of the others. *Rex* v. *Kinnersley* (1719), 1 Str. *193; *People* v. *Richards* (1885), 67 Cal. 412, 7 Pac. 828, 56 Am. Rep. 716; *Heine* v. *Commonwealth* (1879), 91 Pa. St. 145, 149; 3 Chitty, Crim. Law (4th Am. ed.), *1141. And one charged with conspiracy, with others named, may be convicted on proof of a conspiracy with any of the others named, without proof of a conspiracy participated in by all of them. 2 McClain, Crim. Law, §981; *State* v. *Adams* (1874), 1 Houst. Crim. Ct. (Del.) 361; *Woodworth* v. *State* (1886), 20 Tex. App. 375. Said instructions in regard to the crime of conspiracy and the manner and means of proving the same are in harmony with and sustained by the foregoing authorities.

Appellant objects to instruction twenty-two given by the court, on the ground, stated in his brief, that it "required the appellant to establish the fact that he was acting in good faith," because, "under the law, he is not required to establish that fact. It is for the State to prove beyond a reasonable doubt that he was not acting in good faith." In said instruction the court informed the jury that the sections of the statute on the subject of conspiracy and blackmail which had been read to them in the instructions should not be so construed as to render a party "liable to indictment for, in good faith, entering into an employment to bring an action for damages against the person who has alienated the affections of his client's wife, or seduced her, or for making, in good faith, a charge against him and demanding satisfaction before the commencement of a suit. Such a charge, if made in good faith, would not be extortion, but for obtaining just satisfaction, and in this case, if you believe that defendant in good faith entered into

such employment with Charles E. Grimes, it is your duty to acquit him, even though Charles E. Grimes was not acting in good faith. But if you find beyond a reasonable doubt from all the evidence in the case that the defendant did not enter into such employment in good faith, but for the purpose of extorting money by blackmail from Will E. Kessler, * * * as charged in the indictment, you may find him guilty as charged in the indictment." It is evident that this instruction is not open to said objection. Said instruction did not require appellant to prove that he was acting in good faith, but it informed the jury that they could not convict unless they found "from all the evidence, beyond a reasonable doubt, that he was not acting in good faith," etc. The instruction fully complies with the contention of appellant that "it is for the State to prove beyond a reasonable doubt that he (appellant) was not acting in good faith."

Appellant objects to instruction twenty-three given by the court, for the reason "that it lays the burden of proof upon appellant," etc. We do not think the instruction is justly subject to this criticism, but if it were, appellant cannot successfully complain, because said instruction is substantially the same as one which appellant sets out in his brief as requested by him and which he claims the court erred in refusing to give. Elliott, App. Proc., §§626, 627; Ewbank's Manual, §255; *Pennsylvania Co.* v. *Roney* (1883), 89 Ind. 453, 46 Am. Rep. 173; *Indiana, etc., Traction Co.* v. *Jacobs* (1906), 167 Ind. 85, 93.

Complaint is made of instruction twenty-five on the ground that it deprived appellant of the benefit of the evidence of good character. It may be that the first part of said charge, if it stood alone, would be subject to criticism, but under the rule that not only the entire instruction, but all the other instructions given in the case, are to be considered as an entirety, it affords no

ground for reversal. The last part thereof informed the jury that, "if, after consideration of all the evidence in the case, including that bearing upon the good character of the defendant, the jury entertain a reasonable doubt as to the defendant's guilt, it is your duty to acquit him, but if the evidence convinces you, beyond a reasonable doubt, of defendant's guilt, you must so find, notwithstanding his good character." It is true that evidence of a good character of one accused of crime is to be taken into consideration in all cases when introduced in determining his guilt or innocence. The instruction so declares in express terms, for the jury are told to acquit appellant if, after considering all the evidence in the case, including that in regard to his character, they have a reasonable doubt of his guilt. *Rollins* v. *State* (1878), 62 Ind. 46, 54, 55. It will be observed that said instruction says that "if the evidence convinces you beyond a reasonable doubt, of defendant's guilt, you must so find, notwithstanding his good character." As was said in *Rollins* v. *State,* *supra,* page 55: "This last proposition must be correct. If the jury having considered all the evidence, including that in relation to good character; as they were directed to do by the first part of the charge, were satisfied beyond a reasonable doubt of defendant's guilt, it follows that his previous good character could not avail him as a defense or entitle him to an acquittal. Previous good character does not license the commission of crime."

Although there may be verbal inaccuracies and ambiguities in some of the instructions complained of, yet, when they are read and construed with all the other instructions given, and all are considered and construed together as an entirety, as the rule heretofore announced requires, it is clear that the same did not prejudice the substantial rights of appellant.

It is further contended by appellant that the court erred

in refusing to give certain instructions requested by him. There is no available error in this, for the reason that the instructions requested do not appear to have been signed by appellant or his counsel and delivered to the court before the commencement of the argument, as required by subdivision six of §1892 Burns 1901, §1823 R. S. 1881 and Horner 1901. Said instructions not being signed and delivered to the court as required by the statute, no available error was committed in refusing to give the same. *Glover* v. *State* (1887), 109 Ind. 391, 403; *Surber* v. *State* (1884), 99 Ind. 71, 73, 74; *Welsh* v. *State* (1890), 126 Ind. 71, 78, 9 L. R. A. 664. We have, however, examined the instructions requested by appellant and refused by the court, and find that, so far as they correctly expressed the law applicable to this case, they were substantially embraced in those given by the court. Such being the case, appellant would have no ground for complaint, even if the instructions requested had been signed and delivered to the court as required by the statute. *Delhaney* v. *State* (1888), 115 Ind. 499, 501; *Stephenson* v. *State* (1887), 110 Ind. 358, 374, 59 Am. Rep. 216, and cases cited; *Siberry* v. *State* (1896), 149 Ind. 684, 694.

It is urged by appellant that the verdict is contrary to law and the evidence. The argument in support of said causes for a new trial goes only to the credibility of the witnesses and the weight of their testimony. It is only when there is no evidence to prove some one or more of the essential elements of the crime charged that this court is authorized to reverse a case on the ground that the verdict is contrary to law and the evidence. *Deal* v. *State* (1895), 140 Ind. 354. There was evidence given at the trial which fully sustained every material allegation in the indictment, and the learned judge, who presided at the trial of this cause and heard all the evidence, by overruling the motion for a new trial approved the verdict. In such a case, although there was a conflict in the evidence we cannot,

under the well-established rule, reverse the judgment on the weight of the evidence. *Deilks* v. *State* (1895), 141 Ind. 23, 27; *Livingston* v. *State* (1895), 141 Ind. 131-133; *Deal* v. *State, supra*; *Madden* v. *State* (1897), 148 Ind. 183, 187, and cases cited; *Hire* v. *State* (1896), 144 Ind. 359, 361; *Lankford* v. *State* (1896), 144 Ind. 428, 434; *Robb* v. *State* (1896), 144 Ind. 569, 570; *Hudson* v. *State* (1886), 107 Ind. 372, and cases cited; *Kleespies* v. *State* (1886), 106 Ind. 383, 385; *Skaggs* v. *State* (1886), 108 Ind. 54-56; Ewbank's Manual, §46.

Finding no available error, the judgment is affirmed.