HAMILTON *v.* STATE OF INDIANA.

[No. 25,480.   Filed January 30, 1933.   Rehearing denied May 16, 1933.]

*McMahan & Conroy* and *Ira M. Holmes* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *Edward J. Lennon, Jr.,* Deputy Attorney-General, for the State.

TREANOR, C. J.—Appellant was convicted of the offense of burglary in the second degree. The alleged errors relied upon for reversal consist of the court's action in excluding certain offered testimony of appellant as a witness in his own behalf on direct and redirect examination and in refusing to give appellant's tendered instruction number 1.

Appellant contends that the offered testimony was a "material and culminating part of the testimony in support of appellant's theory" that he was forced to be present at the time of the alleged burglary as a part of a general design and scheme of a Mrs. Graves to carry out threats that she would "ruin his reputation and close the doors of society against him from Maine to California." Appellant testified that about two weeks after the burglary he had a talk with a Mrs. Graves in which something was said about the burglary, and he offered to testify that at that time she made the following statement:

> "Well, Fleedy, I got you; you're ruined. I'm the one that gave Ryan the $250.00 and he got the information and got the gang that took you to this bakery where the burglary was committed. If you get out of it, I am going to have you arrested here in Chicago for operation of a confidence game on me and I'll get you anyhow."

This evidence would be clearly inadmissible unless it could be said to come within one of the exceptions to the hearsay rule. Appellant contends that the evidence was admissible as the declaration of a co-conspirator during the existence of a conspiracy. His defense was that he did not willingly engage in the commission of the offense but that by means of duress and threats his participation was compelled as one of the objects of a conspiracy between the Mrs. Graves whose statement, made about two weeks after the crime, was offered in evidence and excluded, and three men who were present at the scene of the crime and forced appellant to participate therein.

Appellant was entitled to present competent evidence of duress and compulsion as a defense to the charge for which he was on trial and if a conspiracy existed to exercise duress and compulsion upon appellant to enforce his participation in the burglary the acts and declarations of the parties to such conspiracy, during its pendency and in furtherance of its objects, would be admissible. *Eacock* v. *State* (1907), 169 Ind. 488, 82 N. E. 1039. The statement of Mrs. Graves, as the declaration of a co-conspirator, would be admissible if the trial court believed that prima facie proof had theretofore been made of the existence of a conspiracy between Mrs. Graves and the three men to compel appellant's participation in the burglary, but would not be admissible to prove the existence of a conspiracy in the absence of such prima facie proof.

". . . It is a rudimental principle that agency, conspiracy, or the like, cannot be proved by the declarations of the alleged agent or conspirator. To make admissions of an alleged conspirator evidence, there must be some evidence, although it need not be strong, of the existence of the conspiracy." *Dye* v. *State* (1891), 130 Ind. 87, 29 N. E. 771, 772.

Appellant had testified that he had been forced and compelled to be present at the scene of the burglary by three men who participated in the offense and he contends that at the time the question was asked calling for the statement of Mrs. Graves it had been shown in evidence that a conspiracy existed and "that appellant was entitled to have the jury hear all the acts and declarations of the conspirators, in order to determine whether or not said conspiracy did, in fact, exist, and as evidence in support of appellant's defense of duress and compulsion." Appellant testified concerning the acts and declarations of the three men who, he alleged, compelled him to participate in the burglary, and if such testimony constituted "proof sufficient in the opinion of the trial judge to establish prima facie the fact of conspiracy" between the three men and Mrs. Graves, then the offered declaration of Mrs. Graves as a co-conspirator should have been admitted, providing the conspiracy was still pending at the time the declaration was made.

". . . Nothing said or done by one of the conspirators in the absence of the others, *after* the common design has been fully consummated, can be used as evidence against the others or effect them in any way." *Card* v. *State* (1886), 109 Ind. 415, 9 N. E. 591, 593.

"Statements or admissions of co-conspirators subsequent to the commission of an offense at a time when the conspiracy is ended or the offense committed for which the conspiracy was formed are not admissible against the defendant on trial." *Kahn* v. *State* (1914), 182 Ind. 1, 5, 105 N. E. 385, 387.

But whether such testimony was sufficient to establish prima facie the fact of conspiracy, and whether, if established, it was still in existence at the time Mrs. Graves made the declaration sought to be introduced, was a question peculiarly for

the consideration and decision of the trial court. (*Card v. State, supra.*) The question as to whether sufficient compulsion and coercion had been exercised upon appellant, by threats of present and immediate violence made at the time he participated in the burglary, to excuse him was for the jury to decide, but it was a question for the court whether the proof of the existence of a conspiracy to coerce the defendant to participate in the burglary was sufficient to justify the admission of declarations of Mrs. Graves as admissions of a co-conspirator. Before this court can say that a motion for a new trial, based upon alleged error in excluding evidence, should have been granted it must clearly appear from the record that the excluded evidence was admissible and that its exclusion was both erroneous and prejudicial. When, as in the instant case, the admissibility of the offered testimony depends upon the finding of a preliminary fact from evidence then before the trial court, this court will not disturb the lower court's ruling upon the question of admissibility unless there is no evidence to support the finding of the trial court as to such preliminary fact. An examination of the record indicates that the trial court would have been warranted in finding that no evidence had been introduced which tended to prove that Mrs. Graves was a party to a conspiracy with the three men who participated in the burglary, and, consequently, it was not error to exclude the evidence of appellant as to what Mrs. Graves had said to him.

Appellant also insists that the statement made to him by Mrs. Graves was admissible when he testified on redirect examination. It appears that on direct examination appellant had been asked whether he had had a "talk with Mrs. Graves" and whether she said anything about "Ryan and the $250.00" and "this burglary." Appellant answered

affirmatively and then offered to testify to the entire conversation, which offer was rejected by the trial court. On cross-examination appellant was asked whether a Mr. Hart heard any of Mrs. Graves' conversation and appellant answered that "he didn't hear the conversation . . . in which she referred to this $250.00 that Ryan gave me." On redirect examination appellant again sought to prove the entire conversation and the trial court sustained the State's objection. Appellant contends that "he had a right on redirect examination to everything material and complete, especially as to conversations, parts of which were brought out by the cross-examination" and in support thereof cites Underhill on Criminal Evidence, §223, 2nd Ed. (§357, 3rd Ed.), which contains the following statements:

> "Where the defendant brings out on the cross-examination a part of a conversation which is material to the crime, the prosecution on the redirect may bring out all the conversation. . . . Redirect examination is largely a matter for the discretion of the trial court."

But it cannot be said that any more of the conversation was brought out by the cross-examination than had been given on the direct examination. No question asked on cross-examination called for any part of the conversation, although, in answering questions concerning the circumstances under which appellant claimed to have talked with Mrs. Graves appellant referred to a part of her conversation, in effect volunteered a part of the conversation. This would not warrant the introduction of the entire conversation on redirect examination.

> "On cross-examination of Z. L. Brown, . . . after answering the question he volunteered a statement as to a conversation which he had with his brother, the deceased. No objection was made to it, but on redirect examination appellant attempted

unsuccessfully in face of an objection to have the witness state definitely when this conversation took place. The matter was purely hearsay and not relating to the subject involved in the question of respondent, and the fact that no motion was made to have the answer stricken out did not warrant any further effort to elucidate the incompetent testimony." *Brown* v. *Lemon Cove Ditch Co.* (1918), 36 Cal. App. 94, 171 Pac. 705, 707.

No error was committed in refusing to permit appellant to give the entire conversation on redirect examination.

The third ground for motion for new trial relied upon by appellant as constituting reversible error was the trial court's refusal to give appellant's tendered instruction No. 1 which related to the element of intent. Appellant contends that "he was entitled to an instruction that defined criminal intent and particularly that he was permitted to disavow imputed purpose of any conduct of his in the transaction and thereby repel the presumption against him." In support of this contention appellant cites *Greer* v. *State* (1876), 53 Ind. 420, and *Shockey et al.* v. *Mills* (1880), 71 Ind. 288, 36 Am. Rep. 196. The proposition for which these cases are authority is that "Where the character of the transaction depends upon the intent of the party, it is competent, when that party is a witness, to inquire of him what his intention was." Instructions Nos. 4, 6 and 7 given by the trial court on the question of intent as an element of the offense were comprehensive and correct statements of the law and fully and fairly protected the interests of the appellant in the light of the evidence. Indeed it could be said that the tendered instruction was less favorable to appellant than the instructions given, in that by the tendered instruction appellant's disavowal of criminal intent was limited to rebutting a presumption of criminal intent

which the jury was authorized, by the instruction, to infer from appellant's acts and declarations; whereas, by the court's instructions the jury were told that the defendant was not guilty unless, from all the facts and circumstances shown by the evidence, which would necessarily include defendant's disavowal, they were satisfied beyond a reasonable doubt that appellant "was exercising his free will and participating in the commission of said crime with the felonious intent to commit or participate" in it. The effect of the court's instruction was to leave upon the State the burden of proving all of the elements of the offense, including the element of intent, while the effect on the tendered instruction was to cast the burden of disproving intent upon the defendant.

Appellant insists that he was entitled to an instruction that defined criminal intent, but the statement contained in the instruction tendered: ". . . No one who violates the law which he is conclusively presumed to know, can be heard to say that he had no criminal intent not to do the forbidden act" is inaccurate and there could be no error in refusing to give the instruction in which it was included.

It follows that the trial court did not err in overruling appellant's motion for new trial.

Judgment affirmed.